Our next case is case number 414-0763, the people of the state of Illinois v. Clarence Thompkins. For the appellant, we have Mr. Mallon. Is that correct, sir? And for the appellee, we have Ms. Wyckoff. You may proceed, counsel. Daniel Mallon Good morning. May it please the court, my name is Daniel Mallon. I'm with the office of the State Appellate Defender's Office, and I represent the petitioner, Mr. Clarence Thompkins. There's only one issue here before the court, and it's whether Mr. Thompkins' petition was wrongly dismissed at the first stage of post-conviction proceedings. Specifically, Thompkins alleged that his appellate counsel was ineffective for failing to argue on direct appeal, that the trial court committed error when it consolidated Thompkins' trial with co-defendant James Manuels. It's our position that this claim meets the low first-stage threshold, as it has an arguable basis in both law and fact. As such, we are asking this court to reverse the summary dismissal of this petition and advance its cause to second-stage proceedings so it can be appointed an attorney. Now, Thompkins and Manuel, of course, were both charged with armed robbery and home invasion, where the state alleged that they entered the Hoppers' home by gunpoint and robbed them of their gun collection. Both defense counsels objected at trial, or before trial, to consolidating the cases. Both counsels argued that either Thompkins or Manuel would take a position at trial that the other one had committed the home invasion along with an individual named Cordero Dunn. Did either take that position at trial? And based on your answer, are we allowed to consider that in evaluating whether or not it was proper to dismiss the post-conviction petition initially? Well, they didn't specifically take the position at trial that it was, in fact, Cordero Dunn. There was no evidence presented concerning Cordero Dunn. But it was, they did object to consolidation on the grounds that the other one was the offender. It was a matter of identification. Well, as the case was presented to the jury, what was the problem? It was a bench trial. Pardon? I admit you're correct. As the case was presented to the court, what was the problem? They didn't take positions that were antagonistic to each other, did they? Saying, I didn't do it, he did? Not directly antagonistic. What does that mean, not directly? Well, it was, at least Tompkins asserted that he was not one of the robbers. He conceded that, yes, he was found with the proceeds. But he did take the position at trial that it was Emanuel who could have and was one of the robbers along with a third unidentified individual. And then the evidence at trial, I mean, generally defendants that are jointly tried or jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial. But our Supreme Court has also specifically recognized that a disparity in the quantity and type of evidence adduced against co-defendants is a vital consideration in evaluating the necessity for severance. I think that's what we have here. It is at least arguable, and we're at the first stage of post-conviction proceedings, so it only has to be argued that a severance was warranted at this stage. But if the record proves otherwise, do we ignore that and move forward? I mean, your client didn't testify, right? Correct. The other defendant didn't testify, correct? Correct. And so to Justice Stein's question, they really didn't present antagonistic defenses, did they? I think it was, they both proceeded that they were not one of the robbers. And how did they do that? Well, they, the evidence, it was Thompson's theory at the case that he was not one of the robbers, he just happened to buy the proceeds. But the evidence in trial showed that Manuel was, in fact, one of the robbers. And based on Ryan, the Supreme Court case we cite in their brief, they seem to suggest that it's not necessarily has to be completely directly antagonistic, but if there's a significant disparity in the evidence that's presented against the co-defendants, that can warrant a severance. In what case stands for the proposition that we're reversing the joinder because of a significant disparity that existed? Or is that just musing that such a thing is possible? I'm sorry? In fact, we'd be the first case, the first court to so hold, would we not, counsel, to actually reverse on the basis that, gee, there's a disparity in the evidence? I think Byron reversed on that grounds. Byron, on that basis? Correct, yes. The fact is, Byron, there was two co-defendants. They argued there was a motion for severance before trial that was denied. And then there was a greater amount of evidence presented against the co-defendant. It was witness testimony talking about a murder for hire. And then there was a third offender who also testified against the defendant. And the Illinois Supreme Court reversed, said severance should have been granted due specifically because there was a significant disparity in the evidence. There was overwhelming evidence against the co-defendant in that case. Do we have that here? Yes, we do. Because the evidence in trial established that two masked robbers entered the home, forced their way into the home. Neither the Mr. or Mrs. Hopper, the complainant, could identify either of the defendants. There was only one specific identifying feature. The tattoo. Correct. And so at trial, over both attorneys' objections, of course, they were both asked to come up, show the tattoo to the complaining witness, Mr. Hopper. And it was the court that ultimately determined that Manuel had the same tattoo, the co-defendant, that Mr. Hopper described. Didn't your client work for a moving company? Correct. He moved, right? According to the testimony, right to the room where the guns were? Yes. There was testimony that one of the robbers immediately knew that that's where the guns were. There was some circumstantial evidence linking Mr. Hopper. Including possession of the weapons. The duffel bag. His mother found him possessing the weapons, and he was seen with the duffel bag. But at the same time, the court found this tattoo evidence to be a significant piece of evidence in this case. He commented on it when he made his finding of guilty. It was essentially the missing link. It was the only direct evidence linking our client, Mr. Tompkins, to the offense. And it's because he associated with Manuel, and the tattoo evidence showed that Manuel was actually, in fact, one of the robbers. So we think it's at least arguable. I don't know if there's any dispute that if the cases had been severed, that tattoo evidence wouldn't have been presented. You're arguing that the appellate counsel was ineffective for not raising this? Yes. That means your argument is he should have raised it to this court. Correct. On direct appeal. If this court would have rejected that argument, is that something we can consider? Yes, but I think it's – and even – we have to keep in mind that we are at the first stage of this conviction proceeding. Well, can we consider at the first stage we would have rejected the argument? Yes, because – but at this stage, it only has to be arguable that the issue would have won, and only arguable that – No, if it's arguable that he could have presented it, but we would have rejected it, then what? Since we have a – this isn't a matter to go in front of a jury. This is an issue that supposedly would have been presented to us. Yes, yes. We have an insight on what our thinking might have been about it. Of course, absolutely, yes. Okay, go ahead. I mean, again, this issue, it was at issue from the very beginning. It was in the – it was pre-trial. There was an objection from the foundation. Then you have objection to the tattoo evidence at trial. So it was clear that this was a key piece of evidence. You know, the tattoo evidence was flagged. Isn't there also a difference, counsel, when you're talking about trying to end severance? It seems to me the potential for prejudice, if someone is arguably improperly joined with a co-defendant, is a lot greater in a jury trial than it is in a bench trial. The sense being that judges are supposed to be able to compartmentalize a lot better than jurors and be less, how do I put it, overwhelmed and excited by evidence as a whole as opposed to be able to say what's the evidence as to X and what's as to Y. And this was a bench trial. Isn't that a factor which perhaps could be considered as well? Yes, but you also have to look at the court's comments. I mean, it's instructive to look at the court's comments. What does that mean? Well, when the court was finding Tompkins guilty, he specifically noted the tattoo evidence. And he – the tattoo evidence – And he was trying manual at the same time, right? So why wouldn't he note it? If the cases had not been consolidated, the tattoo evidence wouldn't have come in at all. And this issue was preserved in a post-trial motion. So that means what the appellate counsel would have to show or the state would have had to show that it was harmless beyond a reasonable doubt. Well, here's the other thing about it. You mentioned it wouldn't come in at all. Why is that the case? Why wouldn't the state be entitled to present literally all of the evidence against your client that it presented in this case with both of them? It would, if I understand the question. Would the tattoo evidence have come in? The whole thing, everything. In other words, it seems to me that you have a home invasion and armed robbery here, and I'm not sure why the state wouldn't be able to present everything that was presented to the trial or the facts to put it all into context. Well, the tattoo evidence was only relevant to manual. Well, there was no other tattoo evidence. We want to prove who the accomplice was too, Judge. And I'm thinking, okay, what's the problem? Well, we know if the cases had been severed, there would have been no tattoo evidence at this trial. But there's nothing else. Why wouldn't the victims be allowed to testify? Two men invaded the home. One had tattoos and the other one didn't. And then Mr. Tompkins could have showed his arm and he wouldn't have a tattoo. So that doesn't eliminate him. He's the guy without the tattoo. But the evidence would come in. I mean, there was no other identifying evidence to my client, to Mr. Tompkins. It was very broad. It was very general, just that he met the stature. I think considering the circumstantial evidence, I mean, yes, there was circumstantial evidence. He was found from the proceeds of the robbery. He was found to have the guns. But it was clear that manual was going around selling these guns to anyone who would buy them. And again, this was in a post-trial motion. And so it would have to be shown that it was just harmless beyond a reasonable doubt. That means that there was absolutely no way that the tattoo evidence would have made a difference at Mr. Tompkins' trial. Again, we're only at the first stage of post-conviction proceedings. So it's only arguable that this issue would have won on direct appeal. Defense counsel objected to consolidating cases before trial, again raised in the post-trial motion. I think based on the court's own comments, the tattoo evidence was indeed critical to finding Clarence Tompkins guilty in this case. And if cases had been severed, the tattoo evidence would not have been presented at trial. Why not? It would not have been relevant.  It would have been relevant. Do you guys are involved in committing this crime? Yes. The prosecutor wants to present all the evidence concerning this crime, including, you know, maybe, what's the other guy's name? Manuel? James Manuel, yes. He's sitting in jail. We call him. What about here? We want to see him. Show your sleeve, Mr. Manuel. I mean, what part of this is not going to be admissible to put the entire circumstance of what happened into context? We submit that the tattoo evidence would not have been relevant in this trial. And the only reason the tattoo evidence came in, and the tattoo evidence that's in the record, was because... I keep asking you, why isn't it relevant? You say it wouldn't be, and I'm saying the prosecutor offers it. What's your objection? I think what could have come in is relevant. Okay, prosecutor offers what? Prosecutor offers... he's calling Manuel. He wants him to be exhibited to the trier of fact. Objection. It's prejudicial. It's more prejudicial than probative to my client. The phrase, have you anything else to say before I rule, comes to mind. If I'm the trial judge. It seems to me, I'm going to let it off. We've got this home invasion. We've got, allegedly, two guys. The guy in trial is one of them. I'm letting it all out. And, you know, this is one more reason. Whether it's joined or not, it seems to me, it all comes in. Your theory is, no, it can't come in if it's not joined. And I'm wondering, you still keep telling me it isn't, but why is it? Relevance. It's relevant. It's not relevant to Clarence Tompkins. The tattoo evidence is relevant to James Manuel. Because it can come in at his trial, but it's not going to come in at Clarence Tompkins' trial. I frankly think the victims can testify to the facts that occurred. Absolutely. Two men entered their home. One man had a tattoo. They described the tattoo. I don't see how that doesn't come in. Oh, I completely agree. The victims can definitely testify that one of the robbers has a tattoo. And Clarence Tompkins can present his arm and show that he does not have a tattoo. Well, that's tattoo evidence. Well, I agree. I agree. Yes. No. I believe it's perfectly – no. It's relevant. The victims can certainly testify that they saw that one of the robbers had a tattoo. And then Clarence Tompkins, at his trial, can present his arms and show, I don't have a tattoo. You're saying that the other guy doesn't have a tattoo. It's our position that if the cases had been severed, no evidence concerning James Manuel's tattoo would have come in. Because the only tattoo that was presented at trial, the only evidence that was presented at trial, was because they were consolidated, because James Manuel was present, he was there to show his arms and show that he did have the same tattoo that the complaining victim had seen. That didn't prove that Clarence Tompkins was one of the robbers. It was just through the tattoo evidence that James Manuel and the fact that Clarence Tompkins was later found with the proceeds and had some association with James Manuel, that's how the trial court concluded that Clarence Tompkins, my client, was one of the robbers. But had the cases been severed, that tattoo evidence would not have been presented at this trial. So, for these reasons, we're just respectfully asking this court to reverse dismissal of the petition and advance his claim just at the second stage of the post-petition proceedings so he can be appointed an attorney. Thank you, counsel. You'll have more time on rebuttal. Ms. Weickoff. Thank you, Your Honor. May it please the court and counsel. Your Honors, in a nutshell, when we strip away all of the talk about whether appellate counsel is ineffective or trial counsel's ineffectiveness and failing to raise various things, what we have here is defendant asking this court to find trial counsel ineffective for essentially failing to file a motion to reconsider the court's order consolidating the defendant's cases. What we have here was the state filing a motion to consolidate the defendant and his co-defendant James Manuel's cases. Both trial counsel for the defendant and the co-defendant objected to this consolidation. In support of its motion, the state argued some of the things that was discussed during the opening statements here today, that the offense occurred at the same time, on the same day, same location, the same witnesses, and there was no antagonistic defenses. The defendant argued basically that it could have been a third person that had been implicated in home invasions with these two men before. That man, Cordero Dunn, didn't even end up testifying in this trial, and I don't think that he was even mentioned one time throughout the trial. The trial court ruled in the state's favor, said there were not antagonistic defenses, and thus ordered consolidation of these cases. But the trial court even indicated to defense counsel it was willing to reconsider that order should defendant make a better proffer about why there are inconsistent defenses here. Now, on appeal or post-conviction, defendant argues the cases should have been severed based on tattoo evidence. That was never the reasoning given by trial counsel in the underlying cause. Your Honors, here, appellate counsel was not ineffective because appellate counsel recognized numerous things. First, this is a strategic choice, not to file a motion to reconsider, or if counsel were to go ahead and file a motion for severance, which would have essentially been the same thing, that they were in a better position before because the state moved to consolidate the cases. The state then had the burden at that time to demonstrate that consolidation was necessary. At that time, the defendant had a lower threshold to meet to keep the cases separate. Had defendant then filed a motion to sever, the burden would have been on him. Your Honors, moreover, there was significant discussion about the evidence in this case, whether the defendant was prejudiced by tattoo evidence or not. I would like to point to Your Honors that an order authored by Justice Pope and Justice Steinman was on the panel as well. On direct appeal, the court considered the sufficiency of the evidence against this defendant, against Mr. Tompkins. Tattoo evidence was not something that was ever considered by this court in the evidence that implicated the defendant in this case. Rather, the evidence demonstrated that the defendant worked for a moving company. He was in the home where the guns were. He met the stature and the physique of the man who was in the moving company, who was in the home, who arguably had knowledge that there were weapons in the home. The defendant put guns into a green duffel bag. He was later seen with a green duffel bag. The defendant was arrested for an unrelated armed robbery, and he was found in possession of one of the stolen weapons. Moreover, his mother found the weapons in her home and contacted a school official, who then notified police that there were weapons in her home. This was the evidence that this court considered when it found the evidence was sufficient to find the defendant guilty on direct appeal. No mention of the tattoo evidence whatsoever. Your Honor, so the state contends that defendants' reliance on how critical this tattoo evidence was in implicating him in this robbery, the state feels that that argument is misplaced. Furthermore, the state contends that going to trial together was really sound strategy. Even though counsel objected to this when the state moved to consolidate, argued that there could be inconsistent defenses, that didn't end up being the case. Essentially, the defense by both defendants was that they couldn't make an eyewitness in-court identification of me. The men were masked. The victims could not identify the two robbers in court. Moreover, even Mr. Hopper, he was disabled. He suffered from a brain injury. When the tattoos were displayed, he couldn't say for sure if that was the tattoo. Therefore, Your Honor, the state contends this tattoo evidence was not as critical as defendant now on post-conviction makes it seem. Your Honors, unless there are any questions, the state contends that this court should affirm the summary dismissal of defendants' post-conviction position. Thank you. Thank you, counsel. Any rebuttal, Mr. Mallon? Very briefly. Just the argument as to whether or not this was a strategic choice, I'll just point out again that this was objected to before trial and it was put in a post-trial motion. So it was flagged and I don't see how raising this would have detracted from any of the other issues raised on appeal. As to the evidence, yes, this court did find that it was, the evidence was sufficient. But that's not going to be the standard that would have applied to this issue on direct appeal. It would have to be that this tattoo evidence was harmless beyond a reasonable doubt. Why is that harmless beyond a reasonable doubt? Because that's a standard for- That's a constitutional issue. We cited- Severance isn't a constitutional issue. We provided a case in our brief that has held that any issues surrounding severance, the state must prove it's harmless beyond a reasonable doubt. Which court so held? If I may grab my brief. You can do so. Go ahead. People v. Smith, 172, page 23 of the brief. Severance error not reversible if it is harmless beyond a reasonable doubt. That's a first district decision from 1988. It's not binding on us and that's inconsistent with decisions this court has written. Severance or not is not a constitutional issue, is it? No. We've written that constitutional issues are the only ones where harmless beyond a reasonable doubt is the standard. Correct. Why shouldn't we follow that here? Well, even if the standard is not quite harmless beyond a reasonable doubt, it's still a lesser standard than sufficiency of the evidence. Thank you, counsel. We'll be in recess.